**In re BOND, et al.**

Nos. 64-328, 329, 336, 337, 338, 359-71, inc.

Florida Industrial Commission.
Unemployment Compensation Board of Review.
July 31, 1964.

Patrick A. Mears and W. W. Stalvey, both of Tallahassee, for the commission.

Florida Unemployment Compensation Board of Review — A. WORLEY BROWN, Chairman, WALTER L. LIGHTSEY, Member, STIRLING TURNER, Member.

This cause came on for final administrative disposition by the board of review at Tallahassee on July 22, 1964, on its own motion, and was reviewed upon the record.

*Nature of previous decisions:* The appeals referee reversed the determinations by the claims examiner which held that the claimants had been discharged but not for misconduct connected with work, and had charged the employment record of the employer. The appeals referee further held claimants disqualified for the period from February 6, 1964, to April 13, 1964, and May 12, 1964, the date of hearings, because of a labor dispute in active progress at the premises where claimants were last employed.

*Findings of fact:* The employer is engaged in the manufacturing of metal containers, such as those used in the canning industry. The employer's non-supervisory production employees are represented by an exclusive bargaining agent, local no. 4939 of the United Steel Workers of America, AFL-CIO. Since October 1, 1962, there has been in effect a working agreement between the employer and the union. This working agreement contains a "No Lockout" and "No Strike" clause. The agreement also provides for a grievance procedure for company disciplinary action, including dismissals. The procedure is in four steps. When an employee is disciplined, the union representative may three steps are at graduated levels of management review. The present a letter of grievance on behalf of the employee. The first

fourth step is arbitration. The contract further provides that the first and second steps may be bypassed by agreement. The arbitrator at the fourth step is selected by an established procedure, and his findings are binding upon the parties.

The claimants are production workers who were employed by employer at Tampa, Florida, to February, 1964, when they were separated under the following conditions—

On or about February 6, 1964, the employer alleged that certain employees in its lithographing department were deliberately causing a work slowdown or a work stoppage in violation of the working agreement, and the company effected a mass suspension of some 90% of the workers in that department. At that time a majority of the workers, plant-wide, walked off the job because of the suspension of the other workers. These claimants were among those suspended. More than 400 employees remained off the job and withheld their services from the employer. On February 14, 1964, the Florida Industrial Commission determined that a labor dispute existed between the employees and the employer, and that such dispute commenced on February 6, 1964. On February 18, 1964, the employer recalled claimants and other employees to return to work. On February 20, 1964, when claimants had not returned to work, the employer discharged them, alleging violation of the work agreement by claimants encouraging others not to return to work. On February 28, 1964, the Florida Industrial Commission issued a determination holding that the labor dispute between the subject parties ceased active progress on February 24, 1964. Claimants still did not return to work, although importuned to do so by their union and by the employer on February 23, 1964.

Claimants' suspension and/or discharge has been submitted to arbitration pursuant to the bargaining agreement existing between the bargaining agent and the employer.

Claimants' unemployment for the period beginning February 6, 1964, to February 24, 1964, was due to a labor dispute in active progress at the premises at which they are or were last employed.

Claimants were not discharged by the employer.

Claimants voluntarily left their employment without good cause attributable to the employer on February 24, 1964, when they failed to return to work.

*Reasons for decision:* The Florida Unemployment Compensation Law provides that an individual shall be disqualified for benefits with respect to any week in which his unemployment is

found to be due to a labor dispute in active progress at the factory, establishment, or other premises at which he is or was last employed. The record and evidence in this case clearly shows that the labor dispute began at the premises where claimants were employed on February 6, 1964, and that said labor dispute ended on February 24, 1964. Claimants' unemployment during this period was due to a labor dispute in active progress at the premises where they were last employed.

The Florida Unemployment Compensation Law further provides that an individual shall be disqualified for benefits if the commission finds that he voluntarily left his employment without good cause attributable to his employer. The record and evidence in this case show that claimants were recalled by the employer on February 18, 1964, and that claimants did not respond to the recall. The record further shows that on February 23, 1964, claimants' union or bargaining agent held a meeting at which all employees were urged to return to work on the following day, February 24, 1964. Claimants did not return to work on the following day but continued to remain away from their employment. Claimants, in effect, abandoned their employment by not returning to work when ordered to do so, and we can only conclude that they voluntarily left their employment without good cause attributable to their employer.

The courts have consistently held that an attempted discharge by an employer during the pendency of a labor dispute constitutes nothing more than a jockeying of the parties, and is part and parcel of the labor dispute. The employer's attempt to discharge the claimants during the labor dispute was merely part of the labor dispute.

The appeals referee in construing the law held, in effect, that the arbitration proceeding had the effect of continuing the labor dispute beyond February 24, 1964, and that the claimants' unemployment continued to be due to a labor dispute in active progress at the premises at which they are or were last employed. We cannot agree with this contention. Arbitration is a contractual method to prevent a labor dispute and not to create or to perpetuate a labor dispute.

We must conclude from the record and evidence that the labor dispute did in fact end on February 24, 1964.

*Decision*: The decisions of the appeals referee are reversed and modified to read as follows — Claimants are disqualified for benefits for the period from February 6, 1964, to February 24,

1964, because unemployed due to a labor dispute in active progress at the factory, establishment, or other premises at which they are or were last employed. Claimants are disqualified for benefits for the week ending February 29, 1964, plus the five immediately following weeks, and until they have become re-employed and have earned $330, because they voluntarily left their employment without good cause attributable to their employer.